Ok, Mr. Fein. May it please the court, in my limited time, I'd like to discuss three compelling grounds for reversal for which the city has now made a meaningful answer. First, the record allows a reasonable jury to find that the city fired Way in retaliation for taking Finland Leave. Second, the district court erred as a matter of law in ruling that the city didn't interfere with Finland, even if it denied a benefit provided therein, unless Way went for leave. And last, Way engaged in a protected activity for a prima facie case of ADA retaliation by filing a discrimination complaint by seeking fibroids-related accommodations for both. As to Ms. Way's remaining claims, I'd be happy to discuss those issues as time permits. Starting with female retaliation. Well, on the, on the, on the term, the complaint of discriminatory treatment and termination on ADA retaliation, there was a, there was a 14-month gap. So, you have trouble under our case law establishing that, do you not? So, so, temporal proximity is not the only basis with respect to the prima facie case for causality and ADA retaliation. I will note that with respect to the city's arguments, the city only asserted that, that Way never, never, never, never requested accommodations. That's a distinct act from filing an internal discrimination complaint. I would also like to point the court to instances of animus from Ms. Way's supervisor, Iyamu, with respect to her ADA discrimination, discriminatory acts under the ADA, which would be sufficient by themselves, absent temporal proximity, to establish a prima facie case. But with respect to ADA retaliation, the district court resolved on the ground that Way failed to meet the first element of her prima facie case. That is error, because it conflates the act of making an internal complaint about discrimination with the act of requesting accommodations for a disability. Each is a distinct protected act that can each give rise to an ADA retaliation claim. That's Rodriguez and Tucker. And crucially, the city never contests that Way did file her internal discrimination complaint. So with respect to the ground that the district court resolved on, that is sufficient to satisfy the first element of the prima facie case. Returning, if the court has no further questions on that matter, to FMLA retaliation. The basis for the district court's grant of summary judgment here was on the ground that there was no evidence that the city's reason for Ms. Way's termination was pretextual. That is error. The city's termination letter provided one basis for termination. Specifically, it said it fired Way because of IAMU's report of budgetary concerns from August 2019. The issue is that cities are fully entitled to do that. Governmental entities are fully entitled to reorganize even if it affects some of its employees. That is correct, Judge Smith. If there is a reasonable basis in the record that indicates that that was in fact the reason. The issue that we have here is that the city fails to produce any contemporaneous evidence that it had such concerns at the time it took that adverse employment action. The only facts in the record that even relate to the budget are the findings from the city's September 2020 budget report. And problematically for the city, the findings in that report undermine the city's proper justification. Specifically, the report found, one, that the city's legal department was under budget, and two, that the department should have hired more support staff to support its, quote, reasonable number of attorneys. To the extent that the report does not support the city's proper justification and tends to undermine the city's proper justification, under this Court's decision in Evans, that yields a significant inference of pretext that is sufficient to overcome the summary judgment per reads. And furthermore, I believe the basis for reversal on FMLA retaliation becomes even more plain if we look at the record's additional indications of pretext. As explained in Ways' briefing, there were three additional indications. Crucially, the city only responds to one of those three, namely procedural irregularity. Even then, its response to procedural irregularity both fails on the merits and is inconsistent with its position before the district court. The city does not pay any lip service to its shifting post hoc justification about Ways' performance, which was first mentioned in litigation and nowhere inside the termination letter, which Caldwell holds is evidence of pretext, as well as the suspicious timeline surrounding Ways' termination, which, as Judge Smith noted, is unique to the FMLA case, but in no way is necessary for a prima facie case of retaliation under the ADA. Just so I can sort of organize this a little, because there are multiple different claims. We're starting sort of with the FMLA right now. Yes. And the interference claim is that she requested accommodations both for the anxiety and for the fibroids, but as Judge Smith points out, quite a bit of time passes before they terminate her. Am I right? Perhaps I was not particularly clear. The response to Judge Smith's question was purely in respect to the ADA retaliation claim, in which Ways asserts that she was fired as a result of filing an internal discrimination complaint. There's also a FMLA interference claim, which relates to- Okay, you're right, which is the salary reduction. She comes back, has the same title, first attorney, but the record seems to contain just a sharp contradiction, and there are no payroll documents that confirm the answer to that? Precisely. So on FMLA interference, the district court, despite acknowledging Way's pay reduction, granted summary judgment merely because Way took the entirety of the leave she sought. That's pure legal error, because FEMLA's benefits include more than just the right to take leave. FEMLA's express terms also include, among other things, equivalent pay. Per Shirley, this Court's decision in 2013, that makes it the city's burden to show that Way's pay would have been reduced even if she had not taken FEMLA leave. But the city is contending there was no reduction. It's just the record is open to both? So as to the evidence of the pay reduction itself, so the district court credited Way's testimony, and it was right to do so, as to her salary being reduced when she returned from leave in December 2020. That's from her declaration at Record 385, and in that declaration, one sets forth particularized facts on personal knowledge of how and when she discovered that pay raise and of the steps that she took to determine that that reduction was potentially caused by misclassification of her leave. I would also point the Court to Record 414. Here there are e-mails corroborating confusion and misunderstanding as to Way's particular leave. So then on the retaliation claim, she's fired shortly after she comes back, or asks for the extension. That's correct. But the difficulty there would be, is there a fact issue as to pretext, right? Yes. And just your bullet points on what you think create a fact issue there, again. The primary indicator of pretext to survive summary judgment is the absolute lack of evidence providing the city with a reasonable basis to assert a budget concern, as stated in its termination letter. In the Thompson report, you think it's inconsistent. Is it relevant that her boss—pronounce her name— Ayanna. You may have said earlier, I want to demote her, or is there no evidence that she influenced the city council? So there is evidence that Ayanna actually influenced the city council's decision, and that's from the termination letter itself, in which it says that it received a report from the city attorney, which is Ayanna, that reported that, and based off of that, that was the only reason that the city provided as to the basis for Way's termination. I would also point the Court to the additional indicators of pretext that were discussed in Ms. Way's briefing with respect to the post hoc justification, as well as the suspicious timeline and the procedural irregularities, which are additional indicators on top of the lack of evidence supporting— Just so we cover everything, on the underlying ADA claim, one is the anxiety condition, the other is the fibroids condition. The city has very different answers. I think for fibroids, your difficulty might be, but you'll answer, that they seem to accommodate it. She got the surgery. She got the leave. She got the remote flex time. So the city's position has been that Way was granted a femoral leave, all the femoral leave she requested, and Way does not dispute that she received a leave under femoral. However, the city has never represented that it gave her the reasonable accommodations related to her fibroids, and that's specifically the teleworking and the flexible schedule. I thought they did allow her. I thought her boss said, let's give her the remote work. So there's an email to that effect. However, the city didn't move for summary judgment on that ground below that gave Way any kind of fibroid-related limitation. Instead, its position has always been that it didn't have to provide any reasonable accommodations whatsoever because it was not aware of the medical condition related to it. But it's clear they were aware. They got the medical certificate. They gave her the leave. She had to have surgery. So they knew about this condition, and she's asking for leave, and she's, right, and then they're even giving the accommodation of remote work. So what are they not accommodating? So they did provide her the FMLA leave for the periods of incapacity in which she had to recover from her surgery. However, Way alleges at record 182 and 115, both in her first amendment complaint and her motion to dismiss response, that she was not provided either of those accommodations with respect to a flexible schedule in telework for her uterine fibroids limitations. The city never claimed that it did provide her those accommodations at all, and the absence of such an assertion can be found at record 226 to 29 of the city's motion for summary judgment. Were they required to give her the accommodations of her choice? So, no, not necessarily, Judge Douglas. The ADA requires that the employer and the employee, upon learning of the medical condition-related limitation, to engage in an interactive process. The issue here is that the city never so engaged in that process at all with Ms. Way, and that is primarily the issue. So though we talk about accommodations in the form of a flexible schedule in telework, there's always the possibility that had the city engaged, as is required under the ADA, in that interactive process, that those accommodations might have shifted somewhat. But we never got to that question in the first place here. So they clearly engaged giving her leave for the surgery and the medical attention. They clearly did that. So the support for the fact that after all the medical work was done, they wouldn't be flexible in time or remote, I'll find that at 226 to 229? So at 226 to 229 is the city's responses to Way's claim that the city failed to accommodate the limitations from her fibroids. The record site there stands for the proposition that the city didn't aver that it ever gave Way a fibroid-related limitation. And that's important because in responding to the city's motion for summary judgment, Way was not on notice or didn't have any obligation to proffer evidence that she was denied such accommodations because the city just didn't move on that ground. That is, you know, should this court reverse and remand, that is definitely something that Way would aim to develop. The medical certificate that she speaks about in her declaration, does it just say that she has this fibroid condition, or does it actually contain the request for remote and flex time itself? So there are two pieces. So there's a written request asking for, one, a flexible schedule, two, for telework, and three, for a period of leave. The issues with respect to ADA failure to accommodate are the first two bullet points in that written request. And then just quickly on the anxiety condition, what exactly did the district court hold? And there, I guess the issue would be, when Ray is communicating to Inouye, the critical early communication is, I'm exhausted, I'm overwhelmed, I'm working six days a week until midnight, I don't get appreciation, I'm getting yelled at. And only at the tail end does she say, I'm developing anxiety. So where would you point to that they were informed that she had an anxiety medical condition? So to start, the district court resolved this issue and granted summary judgment on the ground that the employer was not aware of the limitations caused by the medical condition-related reason. And I'd like to point the court to two parts of the record, which I believe indicate that the city received the message. The first is that record 285 to 286. This is Iyamu's declaration, in which she states in her declaration that she understood the limitations identified in Ray's email were, quote, attributed to Ray's suspicion she may have been suffering from anxiety. That's directly unlike Patton, for example, where the reason for the noise sensitivity- So they know the condition. What about being informed of I need some accommodation other than not working until midnight? So that comes from record 286 and record 384, Iyamu's declaration and Ray's declaration, respectively. May I finish? Yeah. So there, Ray conversed with Iyamu, tearfully confirmed the reason behind her limitations, and asked for three specific accommodations regarding expectations, timelines, and workflows to, quote, cope with her job's requirements. Thank you. All right. You've saved time for rebuttal, Mr. Kline. Thank you. Mr. Hilfan? So I won't ask you the question I asked you in December, which is how many times you've been here. I think you told us it was 70 or something. I think it's about 110.  I forgot what your answer was. I know. It's my friend's first time. Really? We spoke. Oh, that's wonderful. So about 110. Thanks for having me back. If it pleases the court, my name is Bill Hilfan. I represent, excuse me, the city of Missouri City and Ihemwenma Iyamu, the city attorney. Unfortunately, the district court did not address the fact that Ms. Iyamu does not meet the definition of employer because Judge Bennett found it appropriate to dismiss the entire case, so there isn't a specific finding as to Ms. Iyamu, so she remains a party on appeal. If I may, I'd like to start at the end of the McDonnell-Douglas analysis because it is so obviously dispositive of the appeal here. In Rodriguez v. Eli Lilly in 2016, writing for the panel, Judge Higginson, and this is cited in the brief at page 31, restated the well settled law in this circuit that in order to address the requirement of pretext to respond to a legitimate, non-discriminatory, non-retaliatory reason for the adverse employment action, the employee must present direct evidence. And the court went on and explained the direct evidence, and of course that's necessary because under St. Mary's Honor Center v. 6 in 1993, which this court has consistently applied to a summary judgment standard, notwithstanding the appellant's assertion to the contrary, the plaintiff has the burden to prove both the falsity of the reason as well as the existence of some pretextual basis to cover up actual discriminatory or retaliatory animus, which itself is demonstrated by the evidence, and all of that is missing here. Even in the argument, what I'm hearing is that Ms. Way strongly disagreed with or disbelieved the reasons given by the city, but of course this court has repeatedly held that an employee's subjective belief, no matter how strongly held, is not summary judgment evidence. And that's why pointing to Ms. Way's declaration in response to the motion for summary judgment doesn't really yield much in the resolution of the question because what she did not do is ever present any objective evidence. And I'll jump ahead here, Judge Higginson, in response to a question that you asked as to the FMLA retaliation, the assertion of a diminution in pay. Wait, is that? Okay. I thought that's the interference claim. I'm sorry, sir? The diminution of pay is the interference claim? Yes. You were starting with the retaliation, correct? I started with actually on the pretext question, but I wanted to point out a problem. But on the pretext question, wasn't the firing within a very short period of time? No, as Judge Smith pointed out, the recommendation to reduce that position was 14 months prior to the city council's action. And moreover, that's actually what the letter to Ms. Way explained, that in 2019 the recommendation was made to eliminate that position for budgetary purposes. Council didn't act for 14 months later. Moreover, the evidence is undisputed that council had no knowledge of Ms. Way's leave or her medical condition, let alone that she would later claim to have been disabled. In fact, as the city's human resources director, Mr. Russell, testified. I may be wrong, but I thought the city council acted very quickly after she has requested an extension to the FMLA. And therefore, when we're looking at is there any evidence of pretext, that's why they were saying there were three. But correct me if I'm wrong. One being inconsistent reasons. Your office has too little, your office has too much. Two being Ms. Way, she, as the city attorney gave advice, it's in the termination letter, and she's the one who had been talking about demoting her. So there were little multiple pieces of direct evidence. Well, there's not, Judge, and you said correctly if you're wrong. Yeah, yeah, I do, yeah. What the evidence shows is that Ms. Way began complaining about her working conditions, and your Honor characterized it correctly. It's mischaracterized or misunderstood in the briefing. At record 427 in the investigative interview, as early as March of 2020, now we're almost 10 months, excuse me, 11 months before city council acted in March of 2020. In March of 2020, Ms. Way is complaining about, she's responding to a question confirming one, she never made any written notification of a disability or request for accommodation. That's at .2 on 427. And then the investigator asks, did you ever even make an oral, verbal request? And her response is, I didn't like the culture that Ms. Thomas, Gomez, and Iyamu had created. Lack of policy and procedures, lack of organization, lack of clear instructions and rushed assignments were having an impact on my sanity and my work product. I made requests to address the issues above. Now it's characterized in the briefing. Go ahead, sir. I may have miscommunicated. I'm not talking about the ADA retaliation claim because I agree there's a long period of time. I'm talking about the FMLA retaliation claim. Oh, well, in terms of when she made the request to be absent for her surgery, my recollection is it's in September and council acted in January. But the more important thing is that the court has positive, undisputed evidence that council was not aware of her FMLA leave. So city council meeting as a body is doing budgetary work. The HR director and the city attorney are aware of the FMLA leave, and your Honor correctly characterized every request that was made for leave under the FMLA was granted without exception. Right, but I thought she then asked for an extension. That's granted. She comes back, gets fired. The letter says, you know, in part based on the city council who was aware of these leave requests.   The termination letter doesn't refer to the city council? No. The letter refers to city council, but there's nothing in the letter that says city council was aware of the leave. At record 287, you'll see the affidavit of Martin Russell, the HR manager, who says no one ever informed council of an FMLA leave, of Ms. Way's request for FMLA leave or any leave that she took. No one ever informed council that Ms. Way was disabled because Ms. Way never asserted that she was disabled until after she stopped working for the city. I am very mixed up. I thought she gave a medical certificate about the surgery she was going to get from the fibroids. I thought that was given, so of course her boss would know she's out for surgery. Yes, her boss knows. And that's the city council, right?  City council is a body of citizens, I think it's nine, who come together once a month or once every two weeks and conduct the legislative business of the city. For HIPAA reasons, if no other, city council is not informed of the medical condition of any employee unless it becomes an issue that city council is actually dealing with. But city council was taking up a budgetary proposal that had been made a year and a half earlier in deciding the budget. So, yes, it is correct that, temporally, there is about a three- or four-month period between the request and she's out on leave. No question about that. But the people who made the decision that she's complaining of had no knowledge of that. And there's clear, undisputed evidence of that fact in the record. M.O.A. knew or didn't know that she was out getting surgery? Iyamu knew. Iyamu's testimony is she had no communications with anyone on city council about Ms. Way whatsoever. Mr. Russell, the HR director, testified, no one informed city council of Ms. Way's leave or her medical condition. So there's a disconnect there. Yes, that is coincidence, not causation, but coincidence, that literally, in the literal sense of the word, while this lady is out getting surgery, she's out, and then a couple months later, council meets and they make a budgetary decision. And this court has said that that temporal situation may give rise to an inference, except for two problems. One, the court doesn't allow inferences in rebutting the third element of the McDonald's-Eglis test, so we could really forget about that. But even if we didn't forget about that, you have clear, positive, undisputed evidence that the decision-maker, whose decision is being challenged, was not aware of it. So it could not have been a motivating factor, or if it was a motivating factor, Ms. Way, as Judge Bennett observed, failed to develop any evidence of that at all. She took depositions and no one testified to that. There's simply no evidence in the record that would allow the inference, if the inference were even legally permissible. And moving back quickly on the FMLA interference claim, is your position that the record is conclusive? She didn't suffer a pay reduction? Absolutely, and the record demonstrates that quite amply. In fact, Judge Bennett labeled that as an erroneous assertion. And the reason that he labeled it an erroneous assertion is revealed in Record 412 through 416. The e-mails back and forth between Ms. Way, the human resources director, Ms. Iyamu, about what the nature of the leave will be, and then it's very clear from Ms. Way's declaration, Record 385 at paragraph 17. What Ms. Way says is she noted that the box indicating unpaid leave was unchecked. Therefore, she believed her leave would be paid. And that's exactly what 412 through 416 demonstrate, is Ms. Way's argument was not that her wage was reduced in any way, but that her leave should have been paid. And, of course, that's inconsistent with 29 U.S.C. 2612C, which under the Act specifically says all leave is unpaid, even for employees who are otherwise exempt. But that was Ms. Way's argument, and that is her argument today. That was her argument in the trial court, which was my leave wasn't paid, and that was a reduction in my pay. There was no change to the pay rate of the job. When she comes back, she keeps the same title. She's paid the same. There's no fact dispute there. There is no fact dispute there, and there's no fact dispute that she was not paid for the FMLA leave because that's consistent with the FMLA itself. That was a big deal when Congress enacted the FMLA. That was part of the big compromise. I said that was the grand compromise, Your Honor, because some people wanted it to be paid and others wouldn't vote for it unless it was unpaid. So I thought maybe I got an idea somewhere that there was some kind of dispute about possibly some mistake being made in the calculation of her pay or something like that. Not anything intentional, but is there some possible dispute there, some innocent dispute about making mistakes or whatever? I'm sorry, Judge. It's answered in Paragraph 19 on Record 385. What Ms. Way says is, I conducted a thorough investigation and it became evident that Missouri City had incorrectly classified my FMLA status, leading to a lack of proper notice regarding the salary decrease. But what she's talking about there, you'll find at 412 through 416, is she believed her leave was going to be paid. The reduction was simply a period during which she was not paid. But there is no evidence in the record that her pay changed from the day that before she took leave until as of the day that she returned to work on December 20th, I believe, I'm sorry, December 17th of 2020. So there's nothing in the record other than her, and again, she explains it. She says the city incorrectly classified my FMLA leave, and that resulted in a reduction in pay. On the two ADA claims themselves, was I right in my questioning that the city's response, the city doesn't deny it was on notice of the medical condition about fibroids, but the city's response is we accommodated it? If that's correct, and that's what the district court held, what about opposing counsel's statement that actually the city, there is no evidence the city gave her flex or remote time? Well, the answer lies in this. To some degree, it is correct that the city was aware of the fibroids. The anxiety was never the city. We'll talk about anxiety in a minute on the fibroids.  Because it isn't a disability. I have anxiety 110 times in this building probably. The fibroids are a medical condition, not a disability. And this court has repeatedly drawn the line between medical conditions and disabilities. Medical conditions are a serious medical condition which limits a major life activity. And the major life activity is not I can't do work right now. This court has said that the interpretation of work means the ability to work, not I can't do this particular job. Judge Smith, writing for the panel in Waldrop v. General Electric, which is cited at brief page 21, explains that very distinction. There must be evidence showing an actual disability, which is a serious medical condition that limits a major life activity. And in Patton v. Jacobs Engineering in 2017, cited at page 22 of the brief, the court specifically said when a purported disability is not open and obvious, the employee must specifically identify the disability. Now, to your effect, I apologize. Thanks for allowing me that little detour, Judge. Record 318 is the FMLA request. Ms. Way's doctor identifies the need for surgery, a serious medical condition no one will dispute. But in response to the specific question in the FMLA form, does the medical condition lead to any incapacity, the response is yes. She will be incapacitated for three days to recover from surgery. That is the extent of time requested in the FMLA leave. That is the identification of both the serious medical condition and the lack of an inability to perform a major life activity, with the exception for three days. And, of course, there's no dispute in the record that that time was granted, as well as additional time afterwards, which was not substantiated by a doctor's note, but simply by Ms. Way's request. She did or she didn't request in the interactive dialogue, I need to have flex and remote time. She did or didn't request that. And if she did, if there's any evidence that she did, did the city give it? Or is your answer, she had no disability, that's why we didn't? Well, if I may, yes, except that there was no interactive dialogue because there was no identification of a disability. Okay, but you've agreed there was a disability-afflicting major life event for three days. Yes. Right, okay. Did she say, and I have continuing spasms or bleeding or whatever it is from fibroids, and therefore I need flex time and remote, did she ever ask for flex time or remote, yes or no? She did ask. She asked for flex time. Okay, and does the record reflect that it was given to her, yes or no? I'm sorry, Judge, I'm not seeing where she, I thought she did ask for flex time, but I'm not seeing that. I'm looking at record 388. Okay. She said, when I'm attending appointments, I'd like my schedule to allow me to make time for appointments from 7-2-2020 to 7-23-2020. Well, if she never asked for anything other than the medical leave, then you've, in my mind, you've fulfilled it. But if she asked for it and you're admitting now you didn't give it, then we have to go back to, well, there was no continuing disability. Well, here, I'm sorry, Judge, I missed it. It's on 388, it's her point number two in writing. She says, from 7-2-2020 to 7-3-2020, I would like to work remotely. Okay, so she did request it in this dialogue, and there's no evidence that the city allowed that? I thought M. Way said, let's try to accommodate that, but make sure she works within our remote policy. I guess I'm inventing that. That's in 412 to 416. Way tells her she can do that, she just has to do work. The problem that Way was having with her long before she claimed anxiety and before she had the fibroid condition was she wasn't doing her job. That's what kicked all of this off. But that's partly because the boss is away. She comes back, and we have this extraordinary email exchange where she says, I'm not being appreciated. I'm working until midnight, six days a week. And at the end she says, I'm developing anxiety. And they do cite a case, I forget which case it is, as to anxiety being a condition. And so if we're going to finish up talking about the anxiety, then my thought in analyzing this case was she clearly said she has an anxiety condition. There's no medical certificate, but she said. But she says in this dialogue about, okay, how are we going to handle that, the response is sarcasm. In other words, there's zero response from the city about, well, we're going to give you workflows and timelines, right? That's what you wanted? I don't know that I would characterize it as sarcasm, Your Honor, but Your Honor may. But the point is there's no evidence in the record of a diagnosis of a medical condition of anxiety. And if every employee could walk in and say, I have anxiety, and that triggered the interactive process, that would kind of blow the ADA out of the water. The ADA requires the identification of a serious medical condition. Anxiety may be a serious medical condition if diagnosed, but anxiety is a generic term that people use. Remind me, the district court's ruling in here was to discredit even the disability? Was that its ruling? There was no anxiety condition? Yes, in Versace v. KLS Martin. Right, but Versace, I know that case pretty well. The city was never notified. The city was never notified. It's unequivocal from the e-mails here and the declaration. The city was told, I've got a condition, this is what it needs, workflow, timeline. But the issue in Versace that I'm referring to is not whether KLS Martin was sufficiently notified of the need for an accommodation. That was the issue that that thinker was talking about. But it was that anxiety is not, there's no per se disability in this circuit. That is well settled. There's no such medical condition that is determined to be per se disability. And if there were, it would not start with a generic term like anxiety or anxious. So the answer to your question is if the city didn't treat it as a disability, then they didn't in accordance with this court's well settled precedent that simply in counting the term anxiety does not identify a disability and therefore does not require the interactive process. Thank you. Thank you. No, I appreciate the exchange. Thank you, Mr. Helfand. Mr. Fung for rebuttal. So Judge Higginson, I'd like to respond first with the FMLA retaliation causality chain. So what opposing counsel was referencing with respect to the knowledge of the city counsel versus knowledge of IAMU goes back to the prima facie case, which the district court rightly assumed in favor of Ms. Way. Ms. Way meets both prongs of the Katzpah theory under Harville. On prong one, IAMU knew about Way's FMLA leave, and then there's the temporal proximity from when Ms. Way returned from leave and the time that she was terminated. But how do we apply Katzpah to IAMU as to the city counsel if Russell and the others all said we never talked to her? So that comes directly from the firing letter itself, in which the only basis that the city expressed in its termination letter was IAMU's report of a budget concern. So the city counsel had no other expressed basis for firing Way other than IAMU's report. That's the direct link. I believe that there's no legitimate dispute that when the sole basis for the city's termination is the report of IAMU, that IAMU possessed leverage or exerted influence over the ultimate decision maker. Was that budgetary issue that had been on the table for some time, as Mr. McMahon reminds us? So that budgetary issue, the termination letter says that it started in August of 2019. I will say that with respect to a prima facie case, that Bell-Texron holds that, to the extent that this justification existed for years before the termination actually occurred, actually favors a finding of prima facie causality to the point where the justification was not used until the employee exercised and returned from leave. But furthermore, I will point the court to additional evidence of retaliatory animus on the part of IAMU, which would substitute for temporal proximity in the function of establishing prima facie causality for prong one of Harville. For example, IAMU solicited the outside budget report, which undermines the city's justification, shortly after Way first— One is that her complaint has always been about being paid for leave rather than a reduced salary on return. So that's not actually what the record says. The record speaks for itself. So with respect to female interference, what Way's declaration says is that she believes the cause of her salary reduction was because of that misclassification, not the fact that the record doesn't definitively point to her not receiving pay during the period of leave as the reason as to why the lump sum decreased. The adverse action is the pay salary when she gets back, nothing to do with whether she's being paid during her leave. That is correct. Okay. That's right. That is her claim for female interference. Now, you know, the city is free to espouse its views before a fact finder, but that's not what the record allows. Two other big fact issues to address, fibroids and that claim. All right. What we're hearing now is that she never asked for anything other than the time that she got the surgery? That is not correct. The first and two bullet points on her written request, that's at Record 388, definitively proved that is not so. Furthermore, there's two pieces of evidence in which she communicated that the pain requiring hospital treatment for fibroids was something that was continuing beyond the period of incapacity. And I will note that with respect to the reasonable accommodations noted in HR's request, they were considering accommodations for beyond the period of incapacity that opposing counsel mentioned earlier in the FEMLA certification. Then with respect to anxiety, opposing counsel completely disregards the declaration from Miami, which said that she attributed those limitations to her anxiety. This is not a scenario in which anyone with anxiety can suddenly ask for a reasonable accommodation. The ADA protects limitations to substantial life activities, which is exactly what Way has here. The anxiety affects various aspects of her daily life. Would it be a first? Medical diagnosis? No, you go. Does there need to be a medical diagnosis? It does not. Versagie took extreme pains to clarify that an employee can have a reasonable basis to begin the process prior to receiving a medical diagnosis. And that's also reflected. Have any circuits addressed anxiety as a medical condition, justifying ADA? So Versagie has at least recognized that that is a potential disability. Thank you. All right. Thank you, Mr. Fung. Your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.